## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| Motedata Corporation, | § § § | |
| *Plaintiff*, | § § | Civil Action 2:25-cv-00660 |
| v. | § § | |
| UAB Xirgo Global, | § § § | Jury Trial Demanded |
| *Defendant.* | § | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Motedata Corporation files this Complaint for patent infringement against UAB Xirgo Global. ("Xirgo," or "Defendant") alleging as follows:

### NATURE OF THE SUIT

1.      This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

### THE PARTIES

2.      Plaintiff **Motedata Corporation ("Motedata" or "Plaintiff")** is a Delaware Corporation with a principal place of business at 43211 Lucketts Road, Leesburg, VA 20176.

3.      Upon information and belief, Defendant is a limited liability company duly organized under the laws of Lithuania with its principal place of business located at Chemijos g. 15, Kaunas, 51332 Kauno m. sav., Lithuania.

4.      On information and belief, Xirgo makes, uses, sells, and offers to sell fleet management systems and associated systems and devices to consumers throughout the United States and the State of Texas, including in this judicial District, and introduce such products and services into the stream of commerce knowing and intending that they would be extensively used

in the United States, the State of Texas and this judicial District. On information and belief, Xirgo specifically targets customers in the United States, the State of Texas and this judicial District, including through its website at https://www.xirgoglobal.com, and through the Xirgo Global Fleet Management Software platform, which utilizes vehicle telematics and tracking devices in combination with software applications/features for accessing, managing, and organizing data about the vehicles, referred to collectively herein as the "Accused Products."

## JURISDICTION AND VENUE

5.      This action arises under the patent laws of the United States, 35 U.S.C. § 101, *et seq*. This Court's jurisdiction over this action is proper under the above statutes, including 35 U.S.C. § 271, *et seq*., 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. § 1338 (jurisdiction over patent actions).

6.      Xirgo is subject to personal jurisdiction in this Court. In particular, this Court has personal jurisdiction over Xirgo because Xirgo has engaged in continuous, systematic, and substantial business within this District, in the State of Texas, and in the United States, including substantial marketing, offers to sell, and sales of products and services. Furthermore, upon information and belief, this Court has personal jurisdiction over Xirgo because Xirgo has committed acts giving rise to Plaintiff's claims for patent infringement within and directed to this District.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because, among other things, Defendant is not a resident of the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3). *See also In re HTC Corporation*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) ("The Court's recent decision in TC Heartland does not alter" the alien-venue rule.).

8.      Upon information and belief, Xirgo has conducted and does conduct substantial business in this forum, directly and/or through subsidiaries, agents, representatives, or intermediaries, such substantial business including but not limited to: (i) at least a portion of the infringements alleged herein; (ii) purposefully and voluntarily placing one or more infringing products into the stream of commerce with the expectation that they will be purchased and/or used by consumers in this forum; and/or (iii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in the United States, the State of Texas and in this judicial District.

## THE PATENTS-IN-SUIT

9.      This cause of action asserts infringement of United States Patent No. 7,956,742 (the "'742 Patent"), United States Patent No. 9,218,520 (the "'520 Patent"), and United States Patent No. 11,100,118 ("the '118 Patent") (collectively, the "Asserted Patents").

10.     The '742 Patent, entitled "Method and System for Storing, Retrieving, and Managing Data for Tags," duly and legally issued on June 7, 2011, from U.S. Patent Application No. 11/657,895, filed on June 24, 2007, naming Peter Lupoli, Jay P. Kesan, and Peter Cappello as co-inventors. The '742 Patent is a continuation-in-part of U.S. Patent Application No. 10/952,789, filed on September 30, 2004, and issued as United States Patent No. 7,388,488 ("the '488 Patent") on June 17, 2008. The '742 Patent is subject to a patent term extension under 35 U.S.C. § 154(b) of 1,158 days. A true and correct copy of the '742 Patent is attached hereto as **Exhibit 1** and is incorporated by reference.

11.     The '742 Patent claims patent-eligible subject matter under 35 U.S.C. § 101. *See infra*, ¶¶ 30–42.

12.     Motedata is the owner and assignee of all rights, title, and interest in and under the '742 Patent.

13.    Motedata has standing to sue for infringement of the '742 Patent.

14.    The '520 Patent, entitled "Method and System for Storing, Retrieving, and Managing Data for Tags," duly and legally issued on December 22, 2015, from U.S. Patent Application No. 14/609,470, filed on January 30, 2015, naming Peter Lupoli, Jay Kesan, and Peter R. Cappello as co-inventors. The '520 Patent is a continuation of the '814 Patent. The '520 Patent is subject to a terminal disclaimer. A true and correct copy of the '520 Patent is attached hereto as **Exhibit 2** and is incorporated by reference.

15.    The '520 Patent claims patent-eligible subject matter under 35 U.S.C. § 101. *See infra*, ¶¶ 30–42.

16.    Motedata is the owner and assignee of all rights, title, and interest in and under the '520 Patent.

17.    Motedata has standing to sue for infringement of the '520 Patent.

18.    The '118 Patent, entitled "Method and System for Storing, Retrieving, and Managing Data for Tags," duly and legally issued on August 24, 2021, from U.S. Patent Application No. 16/665,417, filed on October 28, 2029, naming Peter Lupoli, Jay Kesan, and Peter R. Cappello as co-inventors. The '118 Patent is a continuation of the '930 Patent. The '118 Patent is subject to a terminal disclaimer. A true and correct copy of the '118 Patent is attached hereto as **Exhibit 3** and is incorporated by reference.

19.    The '118 Patent claims patent-eligible subject matter under 35 U.S.C. § 101. *See infra*, ¶¶ 30–42.

20.    Motedata is the owner and assignee of all rights, title, and interest in and under the '118 Patent.

21.    Motedata has standing to sue for infringement of the '118 Patent.

22.     The Patents-in-Suit generally relate to the use of tags and the association of said tags with individuals or entities to track and manage the individuals or entities.

23.     Around the fall of 2002 and early 2003, Mr. Lupoli and Dr. Kesan, who are long-time friends, began discussing technologies that might be used to track objects by using tags, such as radio frequency identification ("RFID") tags.

24.     Around May 2003, Mr. Lupoli and Dr. Kesan happened to be in Italy at the same time on different matters. Mr. Lupoli was on vacation in Tuscany, and Dr. Kesan (a long-time, distinguished professor of patent law and inventor on several other patents) was there to lecture at a conference in Pisa, Italy. The two friends spent most of their time in Italy working on their idea. Surrounded by the history and architecture of Italy, they recognized a need to track and manage valuable objects such as priceless paintings, rare wine bottles, expensive inventory, vehicles in a fleet, and even more valuable things like soldiers in the military or family members. They discussed their interests and explored potential solutions for tracking objects using hardware and software.

25.     After returning to the United States, Mr. Lupoli and Dr. Kesan continued discussing the capabilities and functionalities of their tracking system, brainstorming additional features and components, and considering ideas that others might find useful in various industries and potential uses.

26.     In the fall of 2003, Mr. Lupoli and Dr. Kesan formed a company, called "Motedata" (as in "motes" (or specks) of data), to focus their development efforts and to be the owner of their intellectual property. They hired outside patent prosecution counsel and shared their work with them. These efforts led to the filing of the '449 Provisional Application in October of 2003.

27.    Around early 2005, Mr. Lupoli and Dr. Kesan began working with Peter Cappello, who was a Professor of Computer Science at the University of California, Santa Barbara. Mr. Cappello worked with Mr. Lupoli and Dr. Kesan to conceive of and refine certain aspects of their inventions, including the idea of using searches with ranked results to mine tag data. The three inventors continued to expand and refine their thoughts and ideas and developed more detailed solutions. Motedata filed a continuation-in-part (the '742 Patent) naming all three gentlemen as inventors and a series of continuations based on the work of all three inventors.

28.    Motedata has filed and obtained more than 30 U.S. and foreign patents on various aspects of their invention—some of which (including the Asserted Patents) involve contributions by all three inventors and some include only contributions by Mr. Lupoli and Dr. Kesan.

29.    The Asserted Patents describe and claim the core components of the fleet management systems that many companies—including Xirgo—use to monitor and track valuable assets such as vehicles.

30.    The Asserted Patents describe and claim eligible subject matter under 35 U.S.C. § 101. They describe and claim specialized hardware, such as tags that are associated with objects or entities and used to collect data for management and tracking purposes.

31.    Attached as **Exhibit 4** and incorporated by reference is the Declaration of Gregory J. Gonsalves, Ph.D., J.D., regarding Patentable Subject Matter under 35 U.S.C. § 101 in Support of Complaint by Motedata, Inc. ("Gonsalves Decl.").

32.    The claims of the Asserted Patents are not directed to an abstract idea. *See* Gonsalves Decl., ¶¶ 159–60, 173–74, 188–89, 204–05, 218–19, 233–34, 248–49.

33.    As explained by Dr. Gonsalves, the claimed systems and methods represent "concrete solution[s] for resolving particular problems that first arose with the development of

networks hosting wireless devices." Gonsalves Decl., ¶¶ 151, 166, 181, 196, 211, 226, 241. These include: "how to retrieve and organize data associated with one or more wireless tags having sensors, to generate alerts based on the retrieved data, and to generate queries on the data" (*id.*, ¶ 151), "how to retrieve and organize static, dynamic, and temporal data associated with one or more tags having tag identifiers from a plurality of repositories and to query the data" (*id.*, ¶ 166), "how to retrieve and organize data including location data associated with one or more tags having tag identifiers from a plurality of repositories and to query the data" (*id.*, ¶ 181), "how to retrieve and organize data associated with one or more tags having tag identifiers from a plurality of repositories and to query the data (*id.*, ¶¶ 196, 211, 226, 241).

34.     The claimed systems and methods do not threaten to inhibit innovation. Instead, they address problems that only arose with the advent of wireless devices and communication networks. Gonsalves Decl., ¶¶ 153, 168, 183, 198, 213, 228, 243. The patented inventions do not apply to communication generally, but only to the particular problems of how to retrieve and organize specific types of data, generate alerts, organize the data, and respond to queries, for example. *See id.* According to Dr. Gonsalves, there was never a need to address the problems of retrieving and organizing data and performing the additional claimed processing tasks associated with that data before the proliferation of mobile wireless devices and associated networks. *Id.*

35.     The patented solution is concrete, not abstract. According to Dr. Gonsalves, there are numerous other ways to retrieve, organize, and query data, as described in the claims of the Asserted Patents. "For example, a server could receive a data from a wireless device and simply perform a conventional search. The patent[s] do[] not claim those types of systems or any of the myriad of other communication systems." Gonsalves Decl., ¶¶ 154, 169, 184, 199, 214, 229, 244.

36.    The claimed systems and methods "contain[] many limitations that are not present in a simplistic example of mere communication with a wireless device," including, *inter alia*, tags, tag identifiers, control software, sensors, wireless transceivers, memory, a central authority, and a web interface. Gonsalves Decl., ¶¶ 155, 170, 185, 200, 215, 230, 245.

37.    The claims describe "particular operations to be performed by the system and address[] problems that arise in the realm of computer systems." Gonsalves Decl., ¶¶ 156, 171, 186, 201, 216, 231, 246.

38.    Because the claimed solutions are concrete, not abstract, they do not "threaten to 't[ie] up' a 'building block[] of human ingenuity,' which is the 'concern that drives' the judicial carve-out of 'abstract ideas' from § 101." Gonsalves Decl., ¶¶ 157, 172, 187, 202, 217, 232, 247.

39.    Moreover, even if the claims of the Asserted Patents were determined to be drawn to an abstract idea, they are still patent-eligible because they include an "inventive concept" at least because they are "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." Gonsalves Decl., ¶¶ 160, 175, 190, 205, 220, 235, 250 (citing *DDR Holdings, LLC v. Hotels.com*, 773 F.3d 1245, 1257 (Fed. Cir. 2014)); *see also* Gonsalves Decl., ¶¶ 164–65, 179–80, 194–95, 209–10, 224–25, 239–40, 254–55.

40.    The claims of the Asserted Patents do not simply recite applying a known business process to a technological environment. Instead, they "address[] problems specific to the new technology of wireless devices" and the problems of how to retrieve and organize certain types of data associated with wireless tags/entities, and to perform additional processing tasks, such as generating alerts based on the retrieved data, organizing the data, ranking data, and querying the data. Gonsalves Decl., ¶¶ 161, 176, 191, 206, 221, 236, 251.

41.     The claims override a routine sequence of events in that they provide a novel system to retrieve and organize data and to perform the additional claimed processing tasks. *See* Gonsalves Decl., ¶¶ 162, 177, 192, 207, 222, 237, 252.

42.     The claims of the Asserted Patents are directed to the inventive combination of computers, processors, data repositories, and tags to track and monitor attributes of individual entities associated with the tags and providing tangible and usable outputs.

43.     The claims of the Asserted Patents improve the functioning of traditional driver monitoring systems. For example, and without limitation, the use of tags, the ability to associate them with objects or entities, and the determination of static, dynamic, and temporal information associated with the objects via the tags, is an improvement over the prior art that was not well-understood, routine, or conventional at the time. The use of intelligent tags to capture data that is then used in a variety of internal functions improves the overall performance and efficiency of the fleet or asset tracking and management system.

44.     On information and belief, some of the Defendants' products and/or services sold to and/or provided to GPS Insight, Inc., IMD TopCo LLC, and/or Track What Matters, LLC may be covered by a patent license agreement and are specifically excluded from any allegations of infringement. GPS Insight marks its products with Motedata patents, including the Asserted Patents, as seen on the webpages https://www.gpsinsight.com/resources/about/ and also https://www.gpsinsight.com/media/2025/04/Ex-1.pdf.   To be clear, Motedata does not contend that the making, selling, offering for sale, or use of components sold by Xirgo to GPS Insight Inc. is infringing to the extent those components are made, used, sold, or offered for sale by GPS Insight, Inc.  Defendant does not have and requires a license for all other sales or uses in the United States to any other customers of Defendant.

45.     Defendant does not have Motedata's permission to make, use, sell, offer to sell, or import products covered by one or more claims of the Asserted Patents or to perform any methods claimed in the Asserted Patents other than as to the products sold to and/or used by GPS Insight, Inc., IMD TopCo LLC, and/or Track What Matters, LLC.

46.     Defendant needs to obtain a license to the Asserted Patents and cease its ongoing infringement of Motedata's patent rights.

## GENERAL ALLEGATIONS

### Xirgo Global Fleet Management Software Platform

47.     Upon information and belief, Xirgo makes, uses, sells, offers to sell, and/or imports into the United States methods and systems for storing, retrieving, and managing data for tags as claimed in each of the Asserted Patents. For example, and without limitation, Xirgo provides its customers with the Xirgo Global Fleet Management Software platform (the "Xirgo FMP").

48.     According to Xirgo, Xirgo FMP windows application provides tracking functions, including real-time tracking, geo-fencing, fuel monitoring, and standard reporting, for use with fleets including light vehicles, trucks, and heavy and agricultural machinery:

**Complete fleet management application for Windows OS**

Xirgo Global is constantly developing Fleet management software for Windows OS since 2009. More than 2000 business customers are monitoring their vehicles in Xirgo Global Fleet Management application, because:

- basic tracking functions are ready to use - real time tracking, geo-fencing, fuel monitoring, standard reporting;
- 30+ reports package is fully adapted for the needs of customers with different fleets, including light vehicles, trucks, heavy and agricultural machinery;
- advanced setting system allows customers analyze data, according to specific requirements;
- automatic notification system notifies customers on the case of multiple events;
- cloud-based software upgrades are free of charge for Xirgo Global clients;
- customers may order additional functionality.

https://xirgoglobal.com/export/en/fleet-management-software#benefits_block/

49.    The Fleet elements are monitored with Xirgo Global GNSS devices, each of which serves as a "tag" that includes "tag-related data:



**Software compatibility with tracking devices**

As Xirgo Global manufactures GNSS tracking devices, software platforms are compatible with Xirgo Global GNSS devices only. Full range of Xirgo Global tracking equipment models allow to monitor various fleets, including light commercial vehicles, trucks, specialized and agricultural machinery.

Main advantages of Xirgo Global GNSS tracking equipment:

- Devices are manufactured in  ISO 9001 and ISO 14001 certified factory in EU, Kaunas, Lithuania
- E-Mark certified
- Each device is fully tested before selling to the customer
- Equipment meats automotive requirements
- Temperature range:  -40 - +85
- Strong electric circuit, standing impulses up to 120 V
- GSM jamming and power cut-off detection
- Optimized data protocol for reduced GPRS data traffic.

https://xirgoglobal.com/export/en/fleet-management-software#benefits_block/

50.     The Xirgo FMP is accessible via a windows application, web application or a mobile app on both iOS and Android mobile devices.



https://xirgoglobal.com/export/en/fleet-management-software#benefits_block/

51.     Upon information and belief, Xirgo FMP allows system users to access and organize tag-related data:

## Complete fleet management **application for Windows OS**

Xirgo Global is constantly developing Fleet management software for Windows OS since 2009. More than 2000 business customers are monitoring their vehicles in Xirgo Global Fleet Management application, because:

- basic tracking functions are ready to use - real time tracking, geo-fencing, fuel monitoring, standard reporting;
- 30+ reports package is fully adapted for the needs of customers with different fleets, including light vehicles, trucks, heavy and agricultural machinery;
- advanced setting system allows customers analyze data, according to specific requirements;
- automatic notification system notifies customers on the case of multiple events;
- cloud-based software upgrades are free of charge for Xirgo Global clients;
- customers may order additional functionality.

https://xirgoglobal.com/export/en/fleet-management-software#benefits_block/

## **Xirgo Global Fleet** web application for fleet management

Since 2015 web-based application for fleet management is available. Main advantages:

- suitable for the most popular web browsers;
- user-friendly software interface with responsive design;
- +10 report package for basic tracking, fuel and work time management;
- software is compatible with mobile Android application Xirgo Global logistics.

Every month we add additional functionality to Xirgo Global Fleet web application.

https://xirgoglobal.com/export/en/fleet-management-software#benefits_block/

52.

**CarInPhone** Android and iOS application for basic tracking

Having your smartphone equipped with CarInPhone application, which is available for Android and iOS devices, allows users:

**To check their vehicles status:**

• Car location;
• Car battery;
• Outside temperature;
• Additional  CAN-BUS statuses which depend on car model (doors, hood and trunk statuses).

https://xirgoglobal.com/export/en/fleet-management-software#benefits_block/

53.     According to Xirgo, the Xirgo FMP allows users to view rea-time and historical data associated with fleet assets that have tags installed or associated with them:

 





https://xirgoglobal.com/export/en/fleet-management-software#container-1475819405

54.     Each tag in the Xirgo FMP is assciated with a particular vehicle, person, or other equipment. Each iButton or RFID badge includes a unique serial number (e.g., a 64-bit 1 Wire ID or RFID UID). These serial numbers each constitute an example of a tag identifier for that tag

---

iButton and RFID driver identification

https://xirgoglobal.com/export/en/fleet-management-software#container-1475819405

55.     The Xirgo FMP platform provides customers with each of the benefits identified above.

## Summary of Infringement Allegations

56.     Xirgo has infringed and continues to infringe (literally and/or under the doctrine of equivalents), directly, and/or through subsidiaries, agents, representatives, or intermediaries, one or more claims of each of the Asserted Patents by making, using, testing, supplying, causing to be supplied, selling, and/or offering for sale in the United States the Xirgo FMP platform, alone or in conjunction with other Xirgo products, such as the GPS Tracking Devices used with the Xirgo FMP (*see* https://xirgoglobal.com/export/en/fleet-management-software#benefits_block).

57.     Motedata has been and continues to be damaged because of Xirgo's infringing conduct. Xirgo is therefore liable to Motedata in an amount that adequately compensates Motedata for Xirgo's infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

58.     Additionally, upon information and belief, Xirgo markets, sells, and/or uses other products and services that are not covered by the claims of the Asserted Patents but that are used or offered with the Xirgo FMP and/or that benefit Xirgo in ways at least attributable in part to the Xirgo FMP. Accordingly, Motedata is entitled to collect damages from Xirgo for convoyed sales of certain non-patented products and services.

59.     Xirgo failed to obtain permission from Motedata to make, use, sell, offer to sell, and/or import products or services incorporating the inventions claimed in the Asserted Patents.

60.     On information and belief, Xirgo has had knowledge of its infringement of the Patents-In-Suit since shortly after the filing of Motedata's suit against Track What Matters, LLC on May 17, 2024, in the United States District Court for the Eastern District of Texas, Marshall Division, Civil Action No. 2:24-CV-00369.

61.     For each count of infringement listed below, Motedata incorporates and re-states the allegations contained in the preceding paragraphs above, including these General Allegations, as if fully set forth in each count of infringement.

## COUNT I – INFRINGEMENT OF THE '742 PATENT

62.     Motedata incorporates by reference the allegations made in paragraphs 1–62.

63.     Xirgo has been and is now directly infringing the '742 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States products or systems that are covered by and/or that practice the methods described in one or more claims of the '742 Patent, including but not limited to Claims 1, 2, 3, 5, 6, and 8–11.

64.     For example, the Xirgo FMP is a system for retrieving and organizing data that is associated with one or more tags having one or more identifiers from a plurality of repositories. The Xirgo FMP is implemented by at least one computer including one or more processors, comprising the elements described in at least Claims 1, 2, 3, 5, 6, and 8–11.

65.     Additionally, Xirgo is indirectly infringing the '742 Patent in violation of 35 U.S.C. § 271(b) by actively inducing its customers to use products or systems that are covered by and/or that practice the methods described in one or more claims of the '742 Patent, including but not limited to Claims 1, 2, 3, 5, 6, and 8–11. Xirgo's customers' use of the Xirgo FMP constitutes direct infringement of the '742 Patent. Xirgo has had knowledge of the '742 Patent since shortly

after the filing of Motedata's suit against Track What Matters, LLC on May 17, 2024, in the United States District Court for the Eastern District of Texas, Marshall Division, Civil Action No. 2:24-CV-00369, and its ongoing inducement of its customers' use of the Xirgo FMP in light of the infringement allegations made herein and in the attached claim charts is therefore with knowledge of the '742 Patent and with the specific intent to induce ongoing infringement of its claims.

66.    An exemplary claim chart comparing Xirgo's infringing Xirgo FMP systems/methods to one or more claims of the '742 Patent is attached as **Exhibit 5** and is incorporated by reference as if fully set forth herein.

67.    As a result of Xirgo's infringement of the '742 Patent, Motedata has suffered and is owed monetary damages that are adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

68.    Xirgo's infringement of the '742 Patent has been willful since at least the time it became aware of the '742 Patent as described herein

## COUNT II – INFRINGEMENT OF THE '520 PATENT

69.    Motedata incorporates by reference the allegations made in paragraphs 1–62.

70.    Xirgo has been and is now directly infringing the '520 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States products or systems that are covered by and/or that practice the methods described in one or more claims of the '520 Patent, including but not limited to Claims 1, 3, 4, 6–11, and 15–20.

71.    For example, the Xirgo FMP is a system for retrieving and organizing data that is associated with one or more tags having one or more identifiers from a plurality of repositories. The Xirgo FMP is implemented by at least one computer including one or more processors, comprising the elements described in at least Claims 1, 3, 4, 6–11, and 15–20.

72.    Additionally, Xirgo is indirectly infringing the '520 Patent in violation of 35 U.S.C. § 271(b) by actively inducing its customers to use products or systems that are covered by and/or that practice the methods described in one or more claims of the '520 Patent, including but not limited to Claims 1, 3, 4, 6–11, and 15–20. Xirgo's customers' use of the Xirgo FMP constitutes direct infringement of the '520 Patent. Xirgo has had knowledge of the '520 Patent since shortly after the filing of Motedata's suit against Track What Matters, LLC on May 17, 2024, in the United States District Court for the Eastern District of Texas, Marshall Division, Civil Action No. 2:24-CV-00369, and its ongoing inducement of its customers' use of the Xirgo FMP in light of the infringement allegations made herein and in the attached claim charts is therefore with knowledge of the '520 Patent and with the specific intent to induce ongoing infringement of its claims.

73.    An exemplary claim chart comparing Xirgo's infringing Xirgo FMP systems/methods to one or more claims of the '520 Patent is attached as **Exhibit 6** and is incorporated by reference as if fully set forth herein.

74.    As a result of Xirgo's infringement of the '520 Patent, Motedata has suffered and is owed monetary damages that are adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

75.    Xirgo's infringement of the '520 Patent has been willful since at least the time it became aware of the '520 Patent as described herein

## COUNT III – INFRINGEMENT OF THE '118 PATENT

76.    Motedata incorporates by reference the allegations made in paragraphs 1–65.

77.    Xirgo has been and is now directly infringing the '118 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States products or systems that are covered by and/or that practice the methods described in one or more claims of the ' 118 Patent, including but not limited to Claims 1–4, 6–11, 13–17, and 19–20.

78.    For example, the Xirgo FMP is a system for retrieving and organizing data that is associated with one or more tags having one or more identifiers from a plurality of repositories. The Xirgo FMP is implemented by at least one computer including one or more processors, comprising the elements described in at least Claims 1–4, 6–11, 13–17, and 19–20.

79.    Additionally, Xirgo is indirectly infringing the '118 Patent in violation of 35 U.S.C. § 271(b) by actively inducing its customers to use products or systems that are covered by and/or that practice the methods described in one or more claims of the '118 Patent, including but not limited to Claims 1–4, 6–11, 13–17, and 19–20. Xirgo's customers' use of the Xirgo FMP constitutes direct infringement of the '118 Patent. Xirgo has had knowledge of the '118 Patent since shortly after the filing of Motedata's suit against Track What Matters, LLC on May 17, 2024, in the United States District Court for the Eastern District of Texas, Marshall Division, Civil Action No. 2:24-CV-00369, and its ongoing inducement of its customers' use of the Xirgo FMP in light of the infringement allegations made herein and in the attached claim charts is therefore with knowledge of the ' 118 Patent and with the specific intent to induce ongoing infringement of its claims.

80.    An exemplary claim chart comparing Xirgo's infringing Xirgo FMP systems/methods to one or more claims of the '118 Patent is attached as **Exhibit 7** and is incorporated by reference as if fully set forth herein.

81.    As a result of Xirgo's infringement of the '118 Patent, Motedata has suffered and is owed monetary damages that are adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

82.    Xirgo's infringement of the '118 Patent has been willful since at least the time it became aware of the '118 Patent as described herein

## DEMAND FOR A JURY TRIAL

83.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Motedata demands a trial by jury on all issues triable of right by a jury.

## PRAYER FOR RELIEF

84.     WHEREFORE, Motedata respectfully requests that this Court enter judgment in its favor and grant the following relief:

   a.     A judgment that Xirgo has directly infringed one or more claims of each of the Asserted Patents;

   b.     A judgment that Xirgo has indirectly infringed one or more claims of each of the Asserted Patents;

   c.     A judgment and order requiring Xirgo to pay Motedata past and future damages under 35 U.S.C. § 284, including for supplemental damages arising from any continuing post-verdict infringement for the time between trial and entry of the final judgment with an accounting, as needed, as provided by 35 U.S.C. § 284;

   d.     A judgment and order requiring Xirgo to pay Motedata reasonable ongoing royalties on a going-forward basis after final judgment;

   e.     A judgment and order requiring Xirgo to pay Motedata pre-judgment and post-judgment interest on the damages award;

   f.     A judgment and order requiring Xirgo to pay Motedata's costs; and

   g.     Such other and further relief as the Court may deem just and proper.


Dated: June 25, 2025                         Respectfully submitted,


                                             */s/ Shawn A. Latchford*
                                             **SHAWN A. LATCHFORD**

State Bar No. 24066603
*Lead Attorney*
**ANDREW J. WRIGHT**
State Bar No. 24063927
**EDWARD K. CHIN**
State Bar No. 50511688
**NICHOLAS A. WYSS**
State Bar No. 24071459
**BRUSTER PLLC**
680 North Carroll Avenue, Suite 110
Southlake, Texas 76092
817.601.9564 (telephone)
shawn@brusterpllc.com
andrew@brusterpllc.com
ed@brusterpllc.com
nwyss@brusterpllc.com

**COUNSEL FOR PLAINTIFF
MOTEDATA CORPORATION**